A-201-863
Remand
Slip Op. 26-80
POI: 07/01/2023 – 6/30/2024
**Public Document**
E&C/OVIII: KK

***Galvasid S.A. De C.V., v. United States, Steel Dynamics, Inc.; United Steel, Paper And Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, Afl-Cio, Clc; And United States Steel Corporation*,**
**Consol. Court No. 25-00235 & 26-00825 (CIT July 24, 2026)**
**Corrosion-Resistant Steel Products from Mexico**

# FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

## I. SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (Court) in *Galvasid S.A. De C.V., v. United States*, Consol. Court No. 25-00235 & 26-00825, Slip Op. 26-80 (CIT July 24, 2026) (*Remand Order*). These final results of redetermination concern the *Final Determination* of the less-than-fair-value (LTFV) investigation on corrosion-resistant steel products (CORE) from Mexico.[1] In its *Remand Order*, the Court directed Commerce to reconsider the dumping margin of Galvasid S.A. De C.V. (Galvasid) without applying facts otherwise available or an adverse inference predicated on Galvasid's failure to separately report freight or insurance revenue in the U.S. market.

As discussed below, pursuant to the Court's *Remand Order*, Commerce has addressed parties' comments regarding Commerce's decision to not apply facts otherwise available or an

[1] *See Certain Corrosion-Resistant Steel Products From Mexico: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 FR 42187 (August 29, 2025) (*Final Determination*), and accompanying Issues and Decision Memorandum; *see also Corrosion-Resistant Steel Products From Brazil and Mexico: Amended Final Antidumping Duty Determination; Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 FR 59494 (December 18, 2025) (*Amended Final Determination and Order*).

adverse inference with regard to Galvasid's failure to report U.S. freight and insurance revenue, and Commerce's consequent recalculation of Galvasid's dumping margin without a partial adverse facts available (AFA) adjustment to Galvasid's U.S. gross unit price. After considering the comments received, Commerce finds it appropriate to make no further changes to its analysis and continues to find that, because the existing case record does not substantiate that freight and insurance charges were separately negotiated by Galvasid, and to comply with the Court's *Remand Order*, the use of a partial AFA adjustment to Galvasid's U.S. gross unit price is not warranted.[2] Based on this analysis, Galvasid's revised final dumping margin without the inclusion of a partial AFA adjustment on Galvasid's gross unit price for unreported freight and insurance revenue is 14.54 percent, and the revised all-others rate is 14.29 percent.

## II. BACKGROUND

On August 29, 2025, Commerce published the final determination of the LTFV investigation of CORE from Mexico, covering the period July 1, 2023, through June 30, 2024. Commerce conducted a verification of the sales response submitted by Galvasid on May 12-16, 2025, in Monterrey, Mexico. During this verification of sales information at the offices of Galvasid, Commerce discovered that the reported U.S. gross unit price was inclusive of freight and insurance revenue; a fact Commerce was unaware of prior to the verification.

Due to this discovery, in the *Final Determination*, Commerce applied partial facts available with an adverse inference to Galvasid's U.S. gross unit price. Commerce determined that Galvasid had failed to disclose in its initial questionnaire responses that it had included both freight and insurance revenues in the calculation of its reported U.S. gross unit price, or that it

[2] *See* Draft Results of Remand Redetermination, *Galvasid S.A. De C.V., v. United States, Steel Dynamics, Inc.; United Steel, Paper And Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, Afl-Cio, Clc; And United States Steel Corporation*, Consol. Court No. 25-00235 & 26-00825, Slip Op. 26-80, dated September 8, 2026 (Draft Remand Redetermination).

had received these revenues in the U.S. market at all. In the *Remand Order*, the Court stated that, "{t}he existence of internal accounting allocations does not constitute substantial evidence that Galvasid independently negotiated or billed freight or insurance to its U.S. customers. Nothing cited in the record indicates that Galvasid's customers negotiated or paid separate freight or insurance charges. The invoices only show one charge, the price of the CORE to be delivered."[3] The Court found that Commerce accordingly had no basis to apply additional revenue capturing methodology by adjusting Galvasid's reported U.S. gross unit prices, and that Commerce lacked a basis to conclude that Galvasid failed to cooperate to the best of its ability. Additionally, the Court stated that had Commerce needed further information on Galvasid's CIF and DDP sales, it should have requested it prior to verification.[4] Consequently, the Court remanded Commerce to reconsider Galvasid's dumping margin without applying facts otherwise available or adverse inferences.

## III. ANALYSIS

Pursuant to the Court's *Remand Order*, we have reconsidered our determination that Galvasid's U.S. gross unit price warranted applying facts otherwise available with an adverse inference due to its reporting of freight and insurance revenue in its U.S. database. In the *Remand Order*, the Court held that "Commerce thus necessarily lacked a basis to conclude that Galvasid failed to cooperate to the best of its ability under section 1677e(b)(1)," and that "Commerce's application of partial adverse facts available consequently was unsupported by substantial evidence and not in accordance with law."[5] Thus, the Court held that our

---

[3] *See Remand Order* at 16.
[4] *Id.* at 16-17.
[5] *Id.* at 17.

determination that Galvasid failed to act to the best of its ability, and that it did not appropriately develop the administrative record, is unwarranted.

The Court directed Commerce to make this change on the basis that Commerce did not have record evidence of Galvasid's sales invoice that included separately listed freight and insurance line items, or other specific evidence that Galvasid's U.S. customers separately paid or negotiated freight and insurance charges. As the existing case record does not substantiate that freight and insurance charges were separately negotiated by Galvasid, to comply with the Court's *Remand Order*, Commerce finds that the use of partial facts available with an adverse inference to Galvasid's U.S. gross unit price is not warranted. Accordingly, upon remand, Commerce is reversing its application of partial facts available with an adverse inference regarding Galvasid's U.S. gross unit price. Therefore, we have revised the calculation of Galvasid's dumping rate by removing the adjustment to Galvasid's reported U.S. gross unit price.

## IV. INTERESTED PARTY COMMENTS

On September 8, 2026, Commerce issued its Draft Remand Redetermination and provided interested parties with the opportunity to comment.[6] Commerce received a comment from Steel Dynamics, Inc., United States Steel Corporation, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (USW) (collectively, the petitioners).[7] We address the petitioners' comment below.

---

[6] *See* Draft Remand Redetermination.
[7] *See* Petitioners' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand in Consol. Court Nos. 25-00235 & 26-00825," dated September 11, 2026 (Petitioners' Draft Remand Comments).

**Comment 1: Whether Commerce Should Issue its Remand Redetermination Under Respectful Protest**

The following is a verbatim summary of arguments submitted by the petitioners. For further details, *see* the Petitioners' Draft Remand Comments at pages 2-3.

*Petitioners' Comment*:

> Petitioners continue to believe that Commerce properly applied facts otherwise available with an adverse inference {(AFA)} to {Galvasid} in the underlying investigation and that its determination was supported by substantial evidence and otherwise in accordance with law. Accordingly, Commerce should issue its final remand redetermination under respectful protest in order to preserve its rights to appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).

**Commerce's Position:**

The petitioners argue that Commerce's decision to apply partial AFA to Galvasid was supported by substantial evidence and in accordance with law because Commerce instructed Galvasid to report all revenues and all expenses incurred in selling the subject merchandise in the United States, and Commerce was correct in distinguishing between expense reporting and revenue reporting, which are not equivalent.[8] The petitioners therefore argue that Commerce should issue its remand redetermination under respectful protest to reserve its right to appeal the Court's decision to the Federal Circuit.[9]

While we agree with the petitioners' assertion that expense reporting and revenue reporting are not equivalent, as Commerce stated in the Draft Remand Redetermination, we agree with the Court that the record evidence from the investigation did not demonstrate that

[8] *Id.* at 2-3.
[9] *Id.*

Galvasid's sales invoice included separately listed freight and insurance line items, nor was there other specific record evidence that Galvasid's U.S. customers separately paid or negotiated freight and insurance charges.

Regardless of the specific language in Commerce's determination, we do not find it necessary to issue this final remand redetermination under protest. Contrary to the petitioners' assertion, we do not interpret the Federal Circuit's opinion in *Viraj* as an absolute bar to Commerce's exercise of its right to appeal and as requiring Commerce to state "under protest" to retain this right.[10]

## V. FINAL RESULTS OF REDETERMINATION

Consistent with the *Remand Order*, Commerce has reversed its finding of partial application of facts available, with an adverse inference, with respect to Galvasid's reporting of U.S. freight and insurance revenue, and revised the calculation of Galvasid's dumping margin by removing the adjustment to Galvasid's reported U.S. gross unit price, as well as the margin applied to all-other companies.[11] In doing so, Commerce has recalculated a weighted-average dumping margin of 14.54 percent for Galvasid, and 14.29 percent for all-other companies.[12] Because the weighted-average dumping margins for Galvasid and all other companies are different from those in the *Amended Final Determination and Order*, Commerce intends to issue

[10] *Id.* at 2 (citing *Viraj Group, Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003)).
[11] *See* Memorandum, "Margin Calculation Memorandum for Galvasid S.A. de C.V./Perfiles S.A. de C.V.," dated September 8, 2026; *see also* Memorandum, "Draft Remand Redetermination Analysis Calculation of Cash Deposit Rate for Non-Selected Companies," dated September 8, 2026.
[12] *Id.*

a *Timken* notice[13] with the amended final determination, should the Court sustain these final results of redetermination.

9/21/2026

X

Signed by: SCOT FULLERTON

Scot Fullerton
Acting Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations

[13] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).